NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11361


COMMONWEALTH  vs.  ROBERT GULLA.



Middlesex.     January 10, 2017. - April 5, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, & Budd, JJ.[1]


Homicide.  Constitutional Law, Assistance of counsel, Fair
     trial.  Practice, Criminal, Assistance of counsel, Argument
     by counsel, Instructions to jury, Capital case.



Indictments found and returned in the Superior Court
Department on March 4, 2010.

The cases were tried before Thomas P. Billings, J., and a
motion for a new trial, filed on October 29, 2014, was heard by
him.


Stephen Paul Maidman for the defendant.
Jamie Michael Charles, Assistant District Attorney (Casey
E. Silvia, Assistant District Attorney, also present) for the
Commonwealth.


BUDD, J.  The defendant, Robert Gulla, was convicted of

murder in the first degree of the victim on the theories of

---

[1] Justice Botsford participated in the deliberation on this
case prior to her retirement.

deliberate premeditation and extreme atrocity or cruelty.[2]  In this appeal,[3] the defendant asserts that he was denied effective assistance of counsel and a meaningful opportunity to present a complete defense, as well as denied a fair trial based on the judge's failure to give certain jury instructions.  The defendant also seeks relief under G. L. c. 278, § 33E.  After full consideration of the record and the defendant's arguments, we affirm the defendant's convictions and the denial of his motion for a new trial, and decline to grant extraordinary relief pursuant to G. L. c. 278, § 33E.

Background.  We summarize the evidence that the jury could have found, reserving certain details for discussion of specific issues.  On January 23, 2010, the defendant beat, strangled, stabbed, and shot the victim, killing her.  The victim's homicide was the culmination of a short but violent relationship between the two.  The defendant met the victim, who was attending a State university, in early September of 2009 at a college party; the defendant was not a student there.  Soon thereafter they began a dating relationship.

---

[2] The defendant also was convicted of violation of an abuse prevention order.

[3] This court consolidated the appeal from the denial of his motion for a new trial due to ineffective assistance of counsel with his direct appeal.

On September 25, 2009, an altercation between the victim and the defendant in her dormitory led campus police to escort the defendant off campus and issue a no-trespass order. Approximately one and one-half weeks later, the victim lodged a complaint with police after the two had an argument and the defendant pushed her out of his truck and drove away, leaving her stranded on the side of the road.

They spent less time together after that, and the victim began dating a fellow student; however, she continued to see the defendant. One night in early December the victim was visiting with the defendant at his home where he lived with his mother and brother. After the two argued loudly, the defendant punched the victim in the stomach and took her cellular telephone to review its contents. He later smashed it and threw it into the woods near his house. The defendant's mother telephoned the police, and he subsequently was arrested.

On January, 19, 2010, the defendant had an argument via telephone with the victim because she was spending time with her fellow student. The victim thereafter applied for and received a temporary restraining order against the defendant.

Despite the restraining order, three days later, the defendant borrowed his mother's automobile to pick the victim up and drive her to his house to spend the night. The next evening, the defendant's mother found the two of them covered in

blood lying face down, side by side on the floor of the defendant's basement bedroom.  First responders determined that the victim was deceased:  her body was severely bruised and swollen, and she had several stab wounds, including to her throat.  The injuries to her face, including bruises and a pellet gunshot wound between the eyes, rendered her unrecognizable.  By contrast, the defendant regained consciousness and his wounds were less severe.  He had a large cut on his left wrist and a pellet gunshot wound to the temple, consistent with self-inflicted wounds; he also had superficial cuts on his hand, consistent with forceful stabbing motions, and an area at the back of his head that first responders described as filled with fluid feeling "like a sponge."[4]  Nearby was a copy of the temporary restraining order and what appeared to be a suicide note admitting his culpability for the homicide.[5]

Discussion.  1.  Ineffective assistance of counsel.  At trial, defense counsel pursued a diminished capacity defense. He presented a psychiatrist who testified that the defendant suffered from a mental impairment that made him incapable of forming the requisite intent for murder in the first degree. The defendant claims that his trial attorney was ineffective

---

[4] The defendant told first responders that the victim bit him on the back of the head.

[5] The note read:  "To my family I love you all This is the last thing I wanted to happen but it just did."

because the attorney (1) failed to raise a lack of criminal responsibility defense, which would have absolved the defendant of culpability altogether; (2) failed to request a lack of criminal responsibility instruction; and (3) failed to adequately argue the theory that counsel did pursue, diminished capacity, in his closing argument.  The defendant unsuccessfully made the same claims in his motion for a new trial.

Rather than evaluating an ineffective assistance claim under the traditional standard of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974),[6] in cases of murder in the first degree, we apply the standard of G. L. c. 278, § 33E, to determine whether there was a substantial likelihood of a miscarriage of justice.  Commonwealth v. Wright, 411 Mass. 678, 681-682 (1992), S.C., 469 Mass. 447 (2014).  See Commonwealth v. LaCava, 438 Mass. 708, 712-713 (2003), quoting Commonwealth v. Harbin, 435 Mass. 654, 656 (2002).  More particularly, we determine whether there was an error in the course of the trial by defense counsel (or the prosecutor or the judge) "and, if there was, whether that error was likely to have influenced the jury's conclusion."  Wright, supra at 682.  Here, the defendant has not

---

[6] Under Saferian, 366 Mass. at 96, the standard is whether an attorney's performance fell measurably below that which might be expected from an ordinary fallible lawyer and, if so, whether such ineffectiveness has likely deprived the defendant of an otherwise available substantial defense.

met his burden to show that there was a serious failure by his trial counsel.

a. Lack of criminal responsibility defense. The defendant claims that the brutal nature of the crime, his attempted suicide afterward, and his mental condition made lack of criminal responsibility a viable, complete defense to the murder charge.[7] Consequently, he argues, trial counsel was ineffective for failing to pursue a lack of criminal responsibility defense, and for failing to request a jury instruction on it.

The decision of defense counsel regarding the best defense to pursue at trial is a tactical one and will not be deemed ineffective unless manifestly unreasonable when made. Commonwealth v. Vao Sok, 435 Mass. 743, 758 (2002). Here, the defendant has not shown that his trial counsel's tactical decision was manifestly unreasonable. At a hearing on the motion for a new trial, trial counsel testified that he considered the lack of criminal responsibility defense but decided against it because he was unable to find an expert who would testify that the defendant lacked criminal responsibility

---

[7] "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." Commonwealth v. LaCava, 438 Mass. 708, 713 (2003), quoting Commonwealth v. McHoul, 352 Mass. 544, 546-547 (1967), S.C., 365 Mass. 465 (1974) and 372 Mass. 11 (1977) and 445 Mass. 143 (2005), cert. denied, 547 U.S. 1114 (2006).

due to a mental disease or defect.[8]  The motion judge, who was
also the trial judge, made detailed findings including that,
understanding that expert testimony is not necessary to pursue a
lack of criminal responsibility defense, see Commonwealth
v. Monico, 396 Mass. 793, 797-798 (1986), trial counsel chose
not to assert, or request an instruction for, a defense that his
own expert did not support and that could undercut the
diminished capacity defense, which he did assert and which had a
basis in the evidence.  The judge concluded that this was not
ineffective assistance.  We agree.  See Commonwealth v. Cutts,
444 Mass. 821, 828 (2005); LaCava, 438 Mass. at 714-
715; Commonwealth v. Genius, 387 Mass. 695, 697-699 (1982),
S.C., 402 Mass. 711 (1988).  See also Commonwealth v. Mosher,
455 Mass. 811, 827 (2010) ("Many decisions of defense counsel
that are characterized in hindsight as errors may have been
reasonable tactical or strategic decisions when made . . .").

   b.  Closing argument.  The defendant contends that his
trial counsel's closing argument was constitutionally
ineffective because counsel failed to argue diminished capacity
forcefully enough to the jury.  We conclude, as did the judge
below, that this claim is without merit.

---

   [8] The defendant's trial counsel sought opinions from three
experts, two psychologists and a psychiatrist, none of whom
found that the defendant met the legal criteria for lack of
criminal responsibility.

While "[w]ith hindsight, one can always craft a more eloquent and forceful closing argument," trial counsel covered all the necessary points.  Commonwealth v. Denis, 442 Mass. 617, 627 (2004).  He argued that although the two experts on the opposing sides of the case diagnosed the defendant differently, they both agreed that the defendant suffered from mental illness from an early age.  The fact that the defendant had trouble "connecting the dots" was a theme throughout counsel's closing.  He emphasized the unusual way the defendant handled common, albeit stressful, situations as compared to a "normal person."  He also underscored, more than once, the defendant's issues with alcohol.  Finally, he specifically asked the jury to consider that, given the defendant's mental impairment and intoxication, he was unable to form the intent for murder in the first degree.  "[S]uggesting ways in which counsel's closing argument might have been stronger does not make out a claim of ineffective assistance."  Id. at 628.

2.  Jury instructions.  a.  Lack of criminal responsibility instruction.  The defendant claims that he was denied a meaningful opportunity to present a complete defense because the trial judge did not instruct the jury on lack of criminal responsibility, claiming that the judge should have done so despite the fact that the defendant's trial counsel did not request such an instruction.  The argument fails.

Although we have stated that it is best to err on the side of giving a lack of criminal responsibility instruction where the "appropriateness of [such an instruction] is marginal," we did so in a case where the defendant requested the instruction.  Commonwealth v. Mattson, 377 Mass. 638, 642, 644 (1979).  See Monico, 396 Mass. at 802-803.  Here, as discussed supra, the defendant's trial counsel made a tactical decision not to pursue a lack of criminal responsibility defense, and given the paucity of evidence to support such a defense, it would arguably have been error for the judge to have nevertheless, sua sponte, instructed the jury on that theory. See Commonwealth v. Norris, 462 Mass. 131, 144 (2012) (where evidence suggests defense would be unconvincing, judge sua sponte issuing instruction on that defense "might well . . . interfere[] with the defendants' right to present their chosen defenses").

b.  Manslaughter instruction.  The defendant requested a voluntary manslaughter instruction on the theory that he killed the victim during a fight (pointing to evidence of the injury to the back of his head) or, alternatively, that he killed the victim upon learning anew that she had been unfaithful to him. See Commonwealth v. Valentin, 474 Mass. 301, 311 (2016), quoting Commonwealth v. Acevedo, 446 Mass. 435, 443 (2006) ("Where an instruction on voluntary manslaughter is requested, a

trial judge should so instruct the jury if any view of the evidence would warrant a finding that the unlawful killing arose not from malice, but 'from . . . sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense'"). The judge denied the request. The defendant objected at the time and now claims that the denial deprived him of his right to a fair trial. We review the ruling for prejudicial error, and find none. See Commonwealth v. Kelly, 470 Mass. 682, 687-688 (2015).

The evidence at trial did not support a finding of sudden passion induced by reasonable provocation, sudden combat, or excessive use of force in self-defense. Although the defendant told first responders that the victim bit him, there is no evidence that she initiated physical contact. See Commonwealth v. Ruiz, 442 Mass. 826, 838-839 (2004) ("provocation must come from the victim").

As for the theory that the defendant was provoked by the victim's infidelity, "[v]oluntary manslaughter based on heat of passion requires evidence that there was 'provocation that would have been likely to produce in an ordinary person' such a state of mind as would overcome reflection or restraint and that the provocation 'actually did produce such a state of mind in the defendant.'" Commonwealth v. Tassinari, 466 Mass. 340, 355 (2013), quoting Commonwealth v. Sirois, 437 Mass. 845, 854

(2002).  Here, given the evidence that the defendant had prior knowledge of the victim's relationship with her fellow student, he cannot claim a sudden discovery that would serve as reasonable provocation.  See Commonwealth v. LeClair, 429 Mass. 313, 316-317 (1999).  There was no error.

3.  Review under G. L. c. 278, § 33E.  We have reviewed the briefs and the entire record and discern no reason to reduce the degree of guilt or grant a new trial pursuant to our powers under G. L. c. 278, § 33E.

Judgments affirmed.