NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12244


COMMONWEALTH  vs.  JEREMY AMARAL.


Bristol.     April 5, 2019. - June 26, 2019.

Present:  Gants, C.J., Lenk, Lowy, Budd, & Cypher, JJ.


Homicide.  Constitutional Law, Admissions and confessions,
    Voluntariness of statement.  Evidence, Admissions and
    confessions, Voluntariness of statement, Hearsay, Verbal
    completeness, Expert opinion, Photograph.  Practice,
    Criminal, Admissions and confessions, Voluntariness of
    statement, Instructions to jury, New trial, Capital case,
    Jury and jurors, Examination of jurors, Voir dire, Argument
    by counsel, Assistance of counsel.  Jury and Jurors.



Indictments found and returned in the Superior Court
Department on May 2 and June 27, 2013.

A pretrial motion to suppress evidence was heard by Renee
P. Dupuis, J; the cases were tried before Gary A. Nickerson, J.,
and a motion for a new trial, filed on December 29, 2017, was
considered by him.


Susan J. Baronoff for the defendant.
Erica G. Sylvia, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  Following a jury trial, the defendant, Jeremy

Amaral, was convicted of murder in the first degree on the

theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder (with armed robbery as the predicate offense) in connection with the death of Tiffany Durfee.[1]  In this consolidated appeal from his convictions and from the denial of his motion for a new trial, the defendant challenges the denial of his motion to suppress his statements to police, instructions given to the jury, and the improper exclusion of certain hearsay evidence.  The defendant further argues that the judge improperly denied him an evidentiary hearing on his motion for a new trial.  Alternatively, the defendant requests that we exercise our authority under G. L. c. 278, § 33E.

We affirm the defendant's convictions and the order denying his motion for a new trial.  Further, after a review of the entire record, we decline to reduce the verdict of murder in the first degree to a lesser degree of guilt or to set aside the defendant's convictions under G. L. c. 278, § 33E.

Factual background.  We summarize the facts as the jury could have found them, reserving certain details for discussion of specific issues.

On the afternoon of March 13, 2013, the victim was found dead in her living room with her throat cut.  Her two young

---

[1] The defendant also was convicted of misleading a police officer.

children were found unharmed in their bedroom.  A flat screen television was missing from her home.

Based on telephone records, investigators learned that several calls were made between the victim's and the defendant's cellular telephones (cell phones) beginning at approximately 11 P.M. on March 12 and continuing into the early morning of March 13.  On March 14, after learning that police were looking for him, the defendant appeared at the police station.  With him was Michael Garcia, a close childhood friend.  The two were interviewed separately and gave similar accounts of being at the victim's home in the early morning hours of March 13.  Both told police that they took one of the victim's televisions (with her consent) to exchange it for cash and "crack" cocaine.  The two claimed that after smoking the cocaine with the victim, they then invited another individual, whom we shall call David, to the apartment to purchase the victim's second television.  The defendant and Garcia told police that they left David alone with the victim and implicated David in the victim's death.

After confirming that David had an alibi, investigators spoke again to the defendant, and learned that the defendant sold the victim's television to an individual named Jason McCarthy.  McCarthy testified that when the defendant arrived at his home with the television, the defendant's sweatshirt was stained red.  When McCarthy asked the defendant what happened,

he replied, "I just murdered somebody . . . .  No.  I was painting."  When police confiscated the television, it was smeared with red-brown stains that tested positive for the presence of blood.

The defendant and Garcia subsequently were arrested and charged with misleading the police.  When Garcia learned that the television was stained with blood, he admitted to police that he had lied about having been with the defendant in the victim's apartment.  Rather, Garcia said that the defendant had telephoned Garcia from the victim's home at approximately 2 or 3 A.M. to ask for a ride so that the defendant could bring the television to McCarthy.

As part of the investigation, the defendant and Garcia's hands were swabbed; the defendant's hands tested positive for the presence of blood.  Investigators recovered a bloody T-shirt found in a trash can in McCarthy's yard, and a bloody sweatshirt and bloodstained shoes from a second location based on a lead from Garcia.  Deoxyribonucleic acid (DNA) testing of the blood stains on the clothing and shoes did not exclude the victim as the source.  Tests on samples containing DNA from more than one person also did not exclude the defendant and the victim, although they did exclude Garcia, David, and McCarthy, among others.  Further, the soles of the shoes were consistent with footprint impressions found in blood in the victim's apartment.

The defendant, who testified at trial, claimed that although he was present, it was Garcia who killed the victim during an argument over cocaine. The defendant further testified that the story he told police in his first interview was made up to protect Garcia.

Discussion. 1. Statements made to investigators. The defendant claims that the motion judge erred by declining to suppress the videotaped statements he made to investigators because he was not provided with a recitation of the Miranda warnings prior to questioning and because his statements were made involuntarily. "'When reviewing the denial of a motion to suppress, we accept the [motion] judge's findings of fact . . . absent clear error,' but we independently determine 'the correctness of the judge's application of constitutional principles to the facts as found.'" Commonwealth v. Molina, 467 Mass. 65, 72 (2014), quoting Commonwealth v. Tremblay, 460 Mass. 199, 205 (2011). In light of the deference owed the judge's findings, and on our own review of the record, we affirm the order denying the defendant's motion to suppress.

We summarize the detailed findings of fact made by the motion judge. The defendant and Garcia voluntarily appeared at the police station with Garcia at approximately 4 P.M. on March 14, 2013, to be interviewed. The two were escorted to separate interview rooms, but they could converse freely prior

to the start of the interviews.  The defendant also placed telephone calls before the interview began, and he telephoned his mother during a break in the questioning to make dinner plans.  The defendant told investigators at the start of the interview that he had to "get straight" prior to speaking with police, which was interpreted to mean that he had ingested drugs before arriving at the station.  However, he did not smell of alcohol, slur his speech, or otherwise appear to be under the influence of an intoxicating substance.  He was "coherent, lucid and talkative."  He "clearly manifested an understanding of the conversation" and answered questions appropriately.  At some points he expressed wariness of supplying some information for fear of being labeled a "rat"; at others, he attempted to leverage his willingness to cooperate for "consideration" in connection with a pending probation matter.

The tone of the interview was "cordial, polite, nonaggressive, and heavily influenced and controlled by the defendant."  The defendant, a college graduate, had had previous experience with police prior to the interview and had waived his Miranda rights before speaking to police.  Early on, investigators informed the defendant that he was not a suspect in the murder, but that they were attempting to piece together a timeline of the victim's death.  The defendant was cooperative with the investigators:  he voluntarily gave them his cell phone

and signed a consent form to allow them to search it. He also allowed police to photograph the absence of injuries on his hands and to swab him for blood residue.

The defendant never was told that he was in custody or that he could not leave the station. Although one of the officers conducted a quick pat-down of the defendant at one point, that officer did so only when the officers observed the defendant scratching himself, which the defendant explained as a manifestation of his heroin addiction. During two breaks, the defendant was escorted to the bathroom and outside to have a cigarette.

After one break, the investigators told the defendant that Garcia had given them more information than the defendant had provided and suggested that he was not telling them the complete truth. It was then that the defendant indicated that David was the last person to see the victim alive. The defendant further offered to "set up a drug deal" so that investigators could investigate David. The investigators agreed and the defendant left the station to complete the controlled drug purchase with David.

After the controlled drug purchase, the defendant accompanied police back to the station and again was seated in the meeting room, but he was not told that he could not leave the station. Shortly after 9 P.M., police held a second

interview with the defendant, in which he told them that the first television had been sold to Jason McCarthy.  The second interview lasted for a few minutes.  Police confirmed David's alibi for the night of the murder.  They also learned from McCarthy that the first television had blood on it and that McCarthy had seen the defendant with blood on him when he delivered it.  After police received this information, a third interview with the defendant was conducted.  At the start of that interview, the defendant invoked his right to counsel, and he was arrested.

a.  Miranda warnings.  Miranda warnings are required only when a suspect is subject to custodial interrogation. Commonwealth v. Jung, 420 Mass. 675, 688 (1995).  The defendant bears the burden of proving that he was in custody for the purposes being entitled to a recitation of Miranda warnings prior to questioning.  Commonwealth v. Girouard, 436 Mass. 657, 665 (2002).

An interview is custodial where "a reasonable person in the suspect's shoes would experience the environment in which the interrogation took place as coercive" (citation omitted). Commonwealth v. Cawthron, 479 Mass. 612, 617 (2018).  Four factors are considered in determining whether a person is in custody:

"(1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that the person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest."

Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001). We address these factors in turn.

i. The location of the interview. The defendant was interviewed at the police station, a location that may be considered coercive; however, he arrived of his own volition. See Commonwealth v. Sparks, 433 Mass. 654, 657 (2001) (interview that took place at police station was not custodial where defendant arrived and left voluntarily). The defendant argues that the fact that police were attempting to locate him prior to his appearing at the station for an interview put pressure on him to appear. Assuming this is true, it does not alter the objective circumstances of the interview discussed infra. See Groome, supra at 212. See also Commonwealth v. Brum, 438 Mass. 103, 112 (2002).

ii. Whether the police conveyed a belief that the defendant was a suspect. Investigators indicated to the defendant that he was a witness, rather than a suspect, until the third interview, at which point the defendant invoked his

right to counsel and questioning stopped.  Even after speaking with Garcia and confronting the defendant about his not being completely forthcoming, investigators did not tell the defendant that there was any incriminating evidence against him, or that he was under suspicion.  The officers only communicated that they wanted to know more about the events leading up to the victim's death.  See Commonwealth v. Morse, 427 Mass. 117, 123-124 (1998) (investigator's suspicions concerning interviewee immaterial unless they influence objective conditions of interrogation).

iii.  The nature of the interview.  The interview was conducted in a calm and cordial manner, and the defendant heavily influenced its direction.  The defendant apparently felt comfortable enough with the investigators to ask them to put in a good word with his probation officer, and later to suggest that police conduct a controlled drug purchase in which he would participate in order for the officers to investigate David.  We conclude, as the motion judge did, that the environment was not one in which a reasonable person in the defendant's position would not feel free to leave.[2]

---

[2] The defendant's argument that the motion judge impermissibly relied on the defendant's subjective intent and motivation misses the mark.  A motion judge is not forbidden from taking subjective facts into account, especially to the extent that those facts influenced the objective conditions of an interrogation.  See, e.g., Commonwealth v. Groome, 435 Mass.

iv. <u>Freedom to leave</u>. Until the point at which he was arrested, the defendant never was told he was in custody, and in fact he made dinner plans during a telephone conversation with his mother. Further, he left the station without a police escort to participate in a controlled drug purchase.

Considering the above factors in total, we agree with the motion judge that the defendant was not in custody during the questioning, and thus providing the defendant with Miranda warnings before he was interviewed was not mandated.

b. <u>Voluntariness</u>. The right to due process under the Fifth and Fourteenth Amendments to the United States Constitution requires that admissions be voluntarily made, without coercion, to be admissible. <u>Commonwealth</u> v. <u>Magee</u>, 423 Mass. 381, 387-388 (1996). <u>Commonwealth</u> v. <u>Brady</u>, 380 Mass. 44, 48, 52 (1980). The Commonwealth has the burden to prove beyond a reasonable doubt that, "'in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was [not] overborne,' but rather that the statement was 'the result of a free and voluntary act.'" <u>Commonwealth</u> v. <u>Baye</u>, 462 Mass. 246, 256 (2012), quoting <u>Commonwealth</u> v. <u>Durand</u>, 457 Mass. 574, 595-596 (2010), <u>S</u>.<u>C</u>., 475 Mass. 657 (2016), cert. denied, 138 S. Ct. 259 (2017).

---

201, 212-213 (2001); <u>Commonwealth</u> v. <u>Morse</u>, 427 Mass. 117, 124 (1998).

In considering whether a statement was made voluntarily, relevant factors include "conduct of the defendant, the defendant's age, education, intelligence, and emotional stability, experience with and in the criminal justice system, [and] physical and mental condition" (citation omitted). Commonwealth v. Tremblay, 480 Mass. 645, 661 (2018). Here the defendant is a college graduate and previously had been exposed to police questioning in a different context. Although the defendant apparently had ingested heroin prior to the interview, he was alert and oriented, and he did not appear to be under the influence of any intoxicating substances. See Commonwealth v. Silanskas, 433 Mass. 678, 685 (2001) (consumption of intoxicating substances without more does not render statement involuntary); Commonwealth v. Ward, 426 Mass. 290, 294 (1997) (same). The defendant answered questions appropriately, and his responses indicated that he was rational and in control of his faculties.

The defendant demonstrated his understanding by providing information to exculpate himself and inculpate another. See Commonwealth v. McCowen, 458 Mass. 461, 472 (2010) (in finding voluntariness of statements, judge was entitled to consider fact that defendant attempted "to talk his way out of his predicament"), and cases cited. He also suggested, and then participated in, a controlled drug purchase. Based upon the

record before us, we agree with the motion judge that the defendant's statements were voluntarily made.

Because the defendant's statements to the investigators were not made in violation of any of his constitutional rights, we do not find that the motion judge erred in declining to suppress them.

2.  Exclusion of hearsay evidence.  At trial, the defendant's mother testified that, on the night of the killing, the defendant telephoned her to ask if she would buy a television.  On cross-examination, defense counsel elicited further testimony about this conversation.  The defendant's mother stated, "He wanted to know if I wanted to buy [the television], and I said 'Jeremy, I told you not to call me about anything, especially if it's stolen.'"  She continued, "[I]n the background somebody's -- ," at which point the Commonwealth objected on hearsay grounds.

The judge sustained the objection.  At sidebar, defense counsel proffered that the defendant's mother would testify that she heard a female voice in the background saying, "No, it's not stolen; it's my TV," and argued that this statement was admissible under the doctrine of verbal completeness.  The judge ruled that the doctrine of verbal completeness was not applicable and did not permit the witness to testify as to the substance of any statements by the voice in the background.

On appeal, the defendant reiterates that the hearsay statement from an unidentified third party should have been admitted, and that its exclusion constituted prejudicial error. We disagree.

Under the doctrine of verbal completeness, when a party introduces a portion of a statement, "a judge has discretion to allow admission of other relevant portions of the same statement or writing which serve to clarify the context of the admitted portion" (quotations, citation, and alteration omitted). Commonwealth v. Crayton, 470 Mass. 228, 246 (2014). The doctrine allows an adverse party to offer an additional statement to contextualize the one already admitted. Commonwealth v. Aviles, 461 Mass. 60, 75-76 (2011). For a hearsay statement to be admitted under the doctrine, an adverse party must show that the additional statements are "(1) on the same subject as the admitted statement; (2) part of the same conversation as the admitted statement; and (3) necessary to the understanding of the admitted statement." Crayton, supra at 247, quoting Aviles, supra at 75. See Commonwealth v. Clark, 432 Mass. 1, 15 n.8 (2000) (portions of statement sought to be introduced must "qualify or explain" segments previously introduced). Relevance alone is insufficient to support admission. See Commonwealth v. Eugene, 438 Mass. 343, 351 (2003); Mass. G. Evid. § 106 (2018). The doctrine aims to

prevent one party from presenting "a fragmented or misleading version of events" to the fact finder.  Crayton, supra at 246, quoting Aviles, supra.

The proffered statement must meet each component of the doctrine of verbal completeness to be admissible.  Crayton, 470 Mass. at 247.  Concerning the first inquiry here, because all of the statements involved the television, the first requirement was met.

Concerning the second inquiry, here, it was unclear whether the proffered statement was part of the same conversation as that between the defendant and his mother.  The defendant did not make an offer of proof as to any other details about the telephone call -- such as the identity of the third party -- and there was no indication that either the defendant or his mother ever addressed the third party.  See Mass. G. Evid. § 103(a)(2) (2018).

Finally, concerning the inquiry whether the proffered statement was necessary to the full understanding of the admitted statements, Crayton, 470 Mass. at 247, relevance by itself does not provide a sufficient basis for admissibility under the doctrine of verbal completeness.  Eugene, 438 Mass. at 351.  Instead, the statement must "serve to clarify the context of the admitted portion."  Clark, 432 Mass. at 14.  See Crayton, supra at 247 n.3; Commonwealth v. Watson, 377 Mass. 814, 833

(1979), S.C., 409 Mass. 110 (1991). Here, the defendant argues that the third-party statement, "No, it's not stolen; it's my TV," was necessary to explain and qualify the defendant's offer to sell the television because it tends to show the owner's consent to the sale. The defendant also argues that without admitting the statement in question, the jury might have inferred that his silence was an implied, adoptive admission that the television was, in fact, stolen. See Crayton, supra at 247.

In Crayton, 470 Mass. at 246-247, we held that given the admission of the defendant's acknowledgement that he used a certain computer, it was an abuse of discretion under the doctrine of verbal completeness to exclude the defendant's denial that he used the computer to view child pornography. In that case, the denial was necessary to understand the admitted statements because, without it, a reasonable jury "might have understood the other statements the defendant made to the detectives as an implied admission to having viewed the child pornography." Id. at 247.

However, here, the denial of wrongdoing was made by an unidentified third party. See id. at 247-248 (further statements admitted from same person to contextualize that person's previously admitted testimony). See also Aviles, supra at 75 (same). Although the doctrine of verbal completeness does

not require that a proffered statement be from the same speaker as the admitted statement, a trial judge nonetheless reasonably could find that the unprompted comment by the third party did not shed light on any statement attributed to either the defendant or his mother.

Moreover, without any evidence as to the identity of the third party declarant, the proffered statement is especially vulnerable to the foundational problems associated with hearsay -- that is, questionable reliability and the speaker's unavailability for cross-examination. See Commonwealth v. Del Valle, 351 Mass. 489, 491 (1966), S.C., 353 Mass. 684 (1968) (theory underlying exclusion of hearsay is that "the trier of fact is forced to rely upon the declarant's memory, truthfulness, perception, and use of language not subject to cross examination"); 2 McCormick on Evidence § 245 (K.S. Broun ed., 7th ed. 2013) (hearsay disfavored because value of testimony depends on "perception, memory, narration, and sincerity" of witness, which are difficult to evaluate with unavailable declarant).

Thus, because the defendant was unable to demonstrate either that the proffered statement was part of the same conversation as the admitted statement or that it was necessary to the understanding of the admitted statement, the judge did not abuse his discretion by excluding it. See Commonwealth v.

Morin, 478 Mass. 415, 432 (2017) (judge did not abuse discretion "in finding that there was an inadequate foundation to permit the introduction of this [hearsay] evidence").

3. Jury instructions. The defendant contends that the judge erred by declining to give a humane practice instruction sua sponte, and by declining to provide the jury with complete instructions on joint venture.

a. Humane practice instruction. Where the voluntariness of a defendant's admission is in question, under the humane practice rule, the judge will instruct the jury that the prosecution must prove that the defendant's statements were voluntary beyond a reasonable doubt. See Commonwealth v. Gallett, 481 Mass. 662, 686 (2019), quoting Commonwealth v. Sunahara, 455 Mass. 832, 835 (2010).

Here, prior to trial, the defendant moved to suppress the statements he made to police partially based on grounds of voluntariness: he claimed to have been under the influence of narcotics at the time of the interrogation. Although, in denying the defendant's motion to suppress, the motion judge found that the defendant's statements were voluntary, the defendant argues that the jury could have found otherwise, and now asks us to conclude that the trial judge's failure to give

the instruction sua sponte resulted in reversible error.[3]  This
we cannot do.

A humane practice instruction is required when the
voluntariness of a confession or admission is a live issue at
trial, even in the absence of a request from defense counsel.
Commonwealth v. Kolenovic, 478 Mass. 189, 198-199 (2017).
However, a judge does not have an obligation to instruct on
humane practice unless voluntariness actually "is made a live
issue at trial."  See Commonwealth v. Alicea, 376 Mass. 506, 523
(1978).

There was no indication that voluntariness was part of his
defense at trial.  Trial counsel did not present voluntariness
as an issue in his opening statement, did not ask the defendant
about the voluntariness of his statements during the defendant's
direct examination, and did not raise the question of
voluntariness during the closing argument.  See Alicea, 376
Mass. at 523.  To the contrary, trial counsel made clear that
voluntariness was not in play.  At two points during the trial,
the judge asked defense counsel whether voluntariness was an
issue as it pertained to the humane practice rule.  The first

---

[3] Because trial counsel did not request a humane practice
instruction (in fact, he specifically declined one), any error
would be reviewed for a substantial likelihood of a miscarriage
of justice.  Commonwealth v. Dykens, 438 Mass. 827, 831 (2003).
As discussed infra, we perceive no error.

time the judge inquired was prior to the Commonwealth's presentation of the video recording of the defendant's statement to investigators; the second time was during the charge conference. Each time, trial counsel responded in the negative.

As the defendant did not make the voluntariness of his statement to police a live issue at trial, and, in fact, indicated that it was not a live issue, the judge did not err by declining to give a humane practice instruction sua sponte. See Commonwealth v. Nieves, 429 Mass. 763, 769-770 (1999) (despite evidence of defendant's drug use or drug withdrawal prior to arrest and confessions, "the issue of voluntariness was not raised with sufficient point to require an express admonition to the jury by the Court" [citation and quotations omitted]).

b. Joint venture instruction. At trial, defense counsel included a joint venture instruction in a written request for jury instructions. However, at the charge conference, he did not ask for the instruction. The defendant now claims that he was entitled to such an instruction. This argument lacks merit.

First, there was no evidence presented at trial of a joint venture. See Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009) (joint venture instruction appropriate "[w]hen there is evidence that more than one person may have participated in the commission of the crime"). The Commonwealth's theory of the case was that the defendant killed the victim alone. The

defendant's theory of the case was that, although he was present when the victim died, it was Garcia who killed her and that the defendant had attempted to intervene.  Because joint venture was not raised, no joint venture instruction was warranted.  See Commonwealth v. Gulla, 476 Mass. 743, 748 (2017) (judge need not instruct jury sua sponte on defense theory that defense counsel had made tactical decision not to pursue and where there is "a paucity of evidence to support such a defense").

Second, the concerns that the defendant raises on appeal were actually addressed by the instructions that the judge gave. The defendant argues that although the judge instructed that mere presence and knowledge of the crime are not enough to convict, the instruction did not go far enough because it did not inform the jury that in order to demonstrate a joint venture, the Commonwealth had to prove beyond a reasonable doubt that the defendant knowingly participated in committing the crime with the requisite intent, and that mere association before and after the crime or a failure to prevent the crime is not sufficient to prove joint venture.[4]

---

[4] The instruction with which the defendant finds fault was as follows:

"Before I launch into the various elements of murder, let me state something quite clearly.  Mere presence at a crime scene is never enough to convict someone.  Presence at a crime scene and knowledge of the crime is not enough to

In fact, the judge instructed the jury that, in order to find the defendant guilty, they had to find that there was evidence of each element of murder in the first degree beyond a reasonable doubt, including intent.  The judge also explained the intent requirements for each theory of murder in the first degree that was presented to them.  There was no question from the judge's instructions that the jury had to have found beyond a reasonable doubt that the defendant had the requisite intent to commit murder in order to find him guilty of that crime.  Conversely, the judge made clear that if the jury did not find each element of each offense beyond a reasonable doubt, then they should acquit the defendant of that offense.  Further, the judge also repeatedly reminded the jury that it was the defendant's actions, and not the actions of another, that they were to assess.

Finally, a joint venture instruction would not have benefited the defendant; to the contrary, it would have provided the jury with an alternative basis on which to convict him.  See Commonwealth v. Soares, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979) ("The theory underlying joint enterprise is that one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required

---

convict.  To convict, you have to satisfy the elements of the particular offense that you are considering."

for the crime is guilty as a principal").  The joint venture instruction from the Zanetti decision is not given in lieu of an instruction on the principal offense, but is instead incorporated into the principal offense instruction.  Indeed, the purpose of the Zanetti instruction is to allow a jury to convict where it "unanimously finds that the defendant participated in the crime charged with the required intent but are divided as to the defendant's precise role in the commission of the crime."  See Zanetti, 454 Mass. at 467.  If the jury were instructed that they could convict based on a theory of joint venture, and they found that the elements of joint venture were present, then they could have convicted the defendant of the principal offense.  See id. at 466-467.  Omitting the instruction was not error.

4.  Motion for a new trial.  While his direct appeal was pending, the defendant filed a motion for a new trial with this court, claiming that the Commonwealth allegedly withheld evidence from defense counsel.  Alternatively, he argued that if defense counsel received the evidence and ignored it, he provided ineffective assistance of counsel.  The motion was considered by the trial judge, who denied it without an evidentiary hearing.  The defendant now contends that the motion judge abused his discretion by declining to hold an evidentiary

hearing prior to ruling on the motion for a new trial.  We disagree.

A judge may decide a motion for a new trial without holding an evidentiary hearing if "no substantial issue is raised by the motion or affidavits."  See Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001).  On appeal, we review a decision not to hold such a hearing for an abuse of discretion. Commonwealth v. Denis, 442 Mass. 617, 628 (2004).  "[W]here, as here, the motion judge was also the trial judge, the judge's finding that the defendant's motion and affidavit did not raise a substantial issue is entitled to substantial deference, . . . and the judge could properly use his knowledge and evaluation of the evidence at trial in determining whether to decide the motion for a new trial without an evidentiary hearing" (citation omitted).  Commonwealth v. Wallis, 440 Mass. 589, 596 (2003). See Commonwealth v. Jenkins, 458 Mass. 791, 803 (2011) ("Reversal is particularly rare where the judge who acted on the motion was also the trial judge").

Here, the defendant alleged that the Commonwealth withheld exculpatory evidence by failing to disclose a taped interview of the victim's son (the child), conducted within days of the killing.  The child, who was four years old at the time of his

mother's death, was in a bedroom when the victim was killed.[5] The judge reviewed the interview and accurately set forth the salient facts, which the defendant does not challenge. The child told an investigator that "the guy that killed mommy took the TV in her room." When asked how he knew, he responded, "Cause when I woke up it wasn't there." He went on, however, to deny having seen someone take the television, and to deny seeing anyone in the apartment when he was going to sleep or when he awoke. In response to leading questions, the child reported that he saw the man's eyes, nose and mouth. The child first indicated that he did not see the color of the man's skin; however, when the interviewer pressed by asking, "Was it brown? Was it black? Was it white?" The child said, "It was -- " and after a long pause, added "black." Through similar questioning, the child reported that the man had no hair, no glasses, and was medium in size. This description did not match that of the defendant, who is Caucasian and wears glasses.

In his affidavit that accompanied the motion, the defendant claimed that had he had this information, he might have altered his trial strategy. In particular, the defendant claimed that he might not have testified in his own defense and that he might have called the child as a witness instead.

---

[5] The child, who was seven years old at the time of the defendant's trial, did not testify.

In denying the defendant's motion, the motion judge ruled that no evidentiary hearing was necessary because the defendant's motion and supporting materials did not raise a substantial issue. See Denis, 442 Mass. at 628. The motion judge concluded that even if the prosecution had failed to disclose the recorded interview, the defendant had not demonstrated that such nondisclosure created a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial. See Commonwealth v. Murray, 461 Mass. 10, 21 (2011) (question is "whether the new evidence would probably have been a real factor in the jury's deliberations" [citation omitted]).[6] The motion judge also concluded that there was no indication that the defendant had been deprived of an otherwise available, substantive ground of defense. See Commonwealth v. Epps, 474 Mass. 743, 757 (2016). We agree.

The motion judge first noted potential issues with the competence of the child witness. Although a child is not per se incompetent by reason of age, a judge who reviews a recorded interview of the child would be "well aware of the age and

---

[6] Neither the defendant nor his trial counsel allege that they specifically requested the evidence at issue here, which would have required that we apply a standard more favorable to the defendant. See Commonwealth v. Ferreira, 481 Mass. 641, 650 (2019).

corresponding limitations of the child." Commonwealth v. Patton, 458 Mass. 119, 135 (2010). As the motion judge observed, the child here gave contradictory accounts of the incident, stating initially that he saw and heard nothing on the night of his mother's murder. Upon further prompting from the interviewer, the child then stated that he saw the person who took the television from his room; the child described this person as a male adult with black skin, no hair, and no glasses. Even had such testimony been found to be competent, the discrepancies in the recorded interview would have significantly diminished its weight and credibility.

Moreover, at trial, the child's testimony would have been pitted against that of Garcia and McCarthy, among others, and the forensic evidence of the defendant's guilt. In Commonwealth v. Lykus, 451 Mass. 310, 328-329 (2008), we considered a previously undisclosed Federal Bureau of Investigation report indicating that voice spectrogram analysis could not identify the defendant's voice on a recording. See id. We concluded that, because multiple lay witnesses had positively identified the voice as that of the defendant, there was no prejudice. See id. Here, we agree with the motion judge that the defendant failed to carry his burden in showing a "substantial basis for claiming prejudice." Commonwealth v. Watkins, 473 Mass. 222, 231 (2015). Therefore, an evidentiary hearing to determine

whether the exculpatory evidence was, in fact, withheld from the defendant, or whether instead trial counsel performed in a constitutionally deficient manner, was not required.[7]

5. Review under G. L. c. 278, § 33E. The defendant additionally asks us to exercise our extraordinary power to grant relief under G. L. c. 278, § 33E, based on any one of a number of factors. Two such factors, alleged faulty jury instructions and the alleged failure to turn over the child's statement, have been addressed supra. We here address the remaining issues raised by the defendant under § 33E.

First, the defendant claims that, because the victim had a prosthetic leg, prospective jurors should have been asked in voir dire about their attitudes toward people with disabilities.[8]

---

[7] The defendant further argues that, in evaluating prejudice, the motion judge erroneously considered the effect of his testimony at the trial (in which the defendant accused Garcia of the killing) on any subsequent trial. Where there is a claim that exculpatory evidence was withheld or counsel was ineffective, prejudice analysis looks to what would have occurred but for the error -- not what might occur at a prospective new trial. See generally Commonwealth v. Epps, 474 Mass. 743, 757 (2016); Commonwealth v. Murray, 461 Mass. 10, 21 (2011). Here, regardless of the discussion about the impact of prior testimony on subsequent trials, the motion judge's conclusions relating to prejudice rested on the weight of the evidence presented at the trial. There was no error.

[8] The defendant does not present this argument as a basis for ineffective assistance of counsel. Nonetheless, we conclude that counsel was not ineffective here for not seeking individual voir dire of prospective jurors regarding their ability to be impartial in light of the victim's disability. Commonwealth v. Companonio, 445 Mass. 39, 52-53 (2005) (defendant's trial

"The scope of voir dire rests in the sound discretion of the trial judge, and a determination by the judge that a jury are impartial will not be overturned on appeal in the absence of a clear showing of abuse of discretion or that the finding was clearly erroneous" (citation omitted). Commonwealth v. Bell, 460 Mass. 294, 303 (2011), S.C., 473 Mass. 131 (2015), cert. denied, 136 S. Ct. 2467 (2016). Here, in addition to asking specific questions about certain potential biases potential jurors might harbor, the judge asked the entire venire whether there was any reason why they might not be able to be fair and impartial, and asked follow-up questions of each person who responded affirmatively. Each juror who comprised the jury that ultimately convicted the defendant was found to be indifferent.[9] There was no error.

---

counsel not ineffective by failing to request that prospective jurors be asked about bias toward Cubans where no suggestion in record that ethnicity had any particular significance in killing).

[9] We note that a member of the venire and, later, a member of the deliberating jury, both of whom worked with disabled individuals, were excused. With regard to the latter, the issue was flagged during deliberations when the juror raised with the court the possibility that she had met the victim a few years prior. During a colloquy with the juror, defense counsel noted that the juror worked at a rehabilitation center and requested that the judge inquire whether the juror's place of employment would affect her ability to be fair. The juror indicated that her occupation would not affect her views on the case. She also told the parties and the judge that she had not said anything to the other jurors about the possibility that she knew the victim. Although the judge concluded after the colloquy that there was

Second, the defendant points to a statement made by trial counsel during closing argument in which counsel conceded that the jury could convict the defendant of murder as long as they "buy one hundred percent the testimony of Michael Garcia . . . [and] of Jason McCarthy."  The defendant does not identify, nor can we discern, any impropriety or ineffectiveness in trial counsel's statement.  Furthermore, the statement is taken out of context.  Before counsel made the statement the defendant complains of, he spent considerable time explaining why Garcia and McCarthy were not credible witnesses.

Third, the defendant takes issue with trial counsel's admittedly tactical decision not to challenge the forensic evidence, and claims that he was prejudiced by "bloody images" shown to the jury.  The admissibility of expert testimony based on scientific knowledge is based on the reliability of the theory or process underlying the expert's testimony.  Commonwealth v. Lanigan, 419 Mass. 15, 24 (1994).  The admission of such evidence is within the discretion of the trial judge.  Commonwealth v. Camblin, 478 Mass. 469, 475 (2017).  As for the

---

no reason to discharge the juror, in an abundance of caution, the judge excused her at the defendant's request.  See G. L. c. 234A, § 39 ("The court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice").  At the time he did so, there was no indication that the deliberations were at an impasse or were otherwise contentious.

jury's exposure to photographs of the victim and the crime scene, "[t]he weighing of the prejudicial effect and probative value of evidence is [also] within the sound discretion of the trial judge, the exercise of which we will not overturn unless we find palpable error." Commonwealth v. Bonds, 445 Mass. 821, 831 (2006). There was no error in the admission or presentation of this evidence.

We have considered the defendant's other arguments regarding the weight of the evidence and conclude that they are similarly without merit. Further, we have reviewed the entire record in accordance with our duties under G. L. c. 278, § 33E, and we conclude that the interests of justice do not require a new trial or a reduction of the verdict of murder in the first degree.

Judgments affirmed.