NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-414

COMMONWEALTH

vs.

MARIO ROSA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was convicted of two counts of rape in violation of G. L. c. 265, § 22 (b).  On appeal, the defendant contends that (1) the trial judge erred in failing to comply with the humane practice rule, (2) the judge erred in admitting certain deoxyribonucleic acid (DNA) evidence, and (3) the prosecutor's closing argument created a substantial risk of a miscarriage of justice.  We affirm.

Discussion.  1.  Humane practice.  The defendant argues that the trial judge erred by failing to conduct a sua sponte voir dire to determine the voluntariness of his statements, and by failing to instruct the jury on the humane practice rule. Because the defendant did not request a voluntariness hearing or

object to the absence of a humane practice instruction,[1] we review to determine whether any alleged errors created a substantial risk of a miscarriage of justice.  See Commonwealth v. Bohigian, 486 Mass. 209, 219 (2020).

Where, as here, the defendant did not raise the issue of the voluntariness of his statements at trial, a judge is obligated to conduct a voir dire hearing sua sponte "only where there is evidence of a substantial claim of involuntariness . . . and where voluntariness is a live issue at the trial." Commonwealth v. Stroyny, 435 Mass. 635, 646 (2002).  If, after conducting a voir dire hearing, the judge concludes that the statement is voluntary, "the issue of voluntariness must be submitted to the jury."  Commonwealth v. Kirwan, 448 Mass. 304, 318 (2007).  If a claim of involuntariness "is not a 'live issue' at trial, there is no obligation for the judge either to conduct a voir dire, or to instruct the jury on the humane practice rule."  Commonwealth v. Pavao, 46 Mass. App. Ct. 271, 274 (1999).

Assuming without deciding that the voluntariness of the defendant's statements was a live issue at trial and therefore the defendant was entitled to a humane practice instruction, we discern no substantial risk of a miscarriage of justice.  The

---

[1] The defendant did not challenge the voluntariness of any statements through pretrial motions or at trial.

2

evidence showed that on the morning after the rape, the victim's boyfriend, along with his brother-in-law, traveled to the defendant's house; the defendant's wife led them to the defendant's bedroom.  The boyfriend questioned the defendant in the doorway of the bedroom.  A few members of the defendant's family were close by during this conversation, including his wife and daughter.  When asked about the victim's claim that he had raped her, the defendant reportedly said, "[N]o, I don't know.  Maybe we been drinking.  I don't know."[2]  Once the victim arrived at the defendant's home, her boyfriend questioned the defendant again about the alleged rape, prompting the defendant to say, "I'm sorry."[3]

Due process "requires that admissions be voluntarily made, without coercion, to be admissible."  Commonwealth v. Amaral, 482 Mass. 496, 502 (2019).  "The Commonwealth has the burden to prove beyond a reasonable doubt that, 'in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was [not] overborne,' but rather that the statement was 'the result of a free and voluntary act'" (citation omitted).  Id.  Although the opening and closing statements placed some emphasis on the voluntariness of the

---

[2] The defendant's responses were in Cape Verdean Creole.
[3] The defendant first apologized in Cape Verdean Creole ("disculpe").  He then said "I'm sorry" in English.

3

defendant's statements, there was little evidence introduced at trial to support the defendant's claim that his statements were the product of coercion or intimidation.[4]  Although there was evidence that the defendant had consumed a lot of alcohol the previous day and evening, there was no evidence that the defendant was intoxicated when he made the statements the following morning.  Even if such evidence existed, "[a]n otherwise voluntary act is not necessarily rendered involuntary simply because an individual has been drinking or using drugs," Commonwealth v. Knowles, 92 Mass. App. Ct. 617, 628 (2018), quoting Commonwealth v. Shipps, 399 Mass. 820, 826 (1987).  See Stroyny, 435 Mass. at 646 ("distress, even profound distress, does not necessarily mean that a defendant is incapable of withholding any information he conveys").

In conclusion, had the judge raised the issue of voluntariness sua sponte, we see no reasonable possibility on this record that the defendant's statements would have been suppressed.  Further, had the issue been submitted to the jury, we see no reasonable possibility that a jury would have

---

[4] The victim's boyfriend had been on friendly terms with the defendant, where they joked, drank, and played cards together. Although he was angry when he confronted the defendant, the victim's boyfriend controlled his voice, respecting that he was in the defendant's home with the defendant's young daughter present.  He did not raise his fists or make any threats toward the defendant.

4

concluded that the defendant's statements were involuntary. Moreover, unlike in Bohigian, where the assertedly involuntary statements "formed the basis for the charge of misleading an investigator," 486 Mass. at 220, here the defendant's statements merely added to the already strong evidence that he had raped the victim. We have no "serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. LeFave, 430 Mass. 169, 174 (1999). Thus there was no substantial risk of a miscarriage of justice. Cf. Commonwealth v. Murphy, 426 Mass. 395, 398 (1998) ("We have reversed a conviction because of the absence of a sua sponte inquiry only where there is a claim of involuntariness far more substantial than this").

2. Admission of DNA evidence. The defendant next claims, for the first time on appeal, that the trial judge erred in admitting what he characterizes as misleading testimony of a forensic scientist concerning the DNA evidence. To support this claim, however, the defendant relies on facts that he has sought to introduce through his brief from case law and other secondary authorities that were not part of the trial record. This is improper and we therefore will not consider this argument in context of the new factual "backdrop" in the defendant's brief. See Commonwealth v. Hinds, 437 Mass. 54, 60 (2002), cert. denied, 537 U.S. 1205 (2003) (declining to address argument on

5

appeal "because it relie[d] on facts not in the record").  See also Commonwealth v. Brule, 98 Mass. App. Ct. 89, 92 (2020) ("Where the Commonwealth was not put on notice of the need to present any evidence on this issue at trial, we must 'decline to reach the merits of the issue raised for the first time on appeal because it depends on the development of facts not in the record before us'" [citation omitted]).

Limiting our review to the evidence in the record before us, we are unpersuaded that the DNA evidence at trial was improperly admitted or was presented in a manner that would mislead or confuse the jury.  There was no dispute that the defendant and his brother shared a DNA profile such that the forensic scientist could not distinguish them.[5]  This was repeated throughout trial and emphasized in closing argument. There was no substantial risk of a miscarriage of justice.

3. Prosecutor's closing argument.  Finally, the defendant challenges the prosecutor's closing argument on several grounds, which again were not preserved at trial.  Thus, we review to determine whether any error created a substantial risk of a

_____

[5] We note that the DNA evidence introduced at trial was in part helpful to the defendant, as it opened the door to his third-party culprit defense.

6

miscarriage of justice.[6]  See Commonwealth v. Carroll, 439 Mass. 547, 554 (2003).

a.  Misstatements of the evidence.  "Closing argument must be limited to discussion of the evidence presented and the reasonable inferences that can be drawn from that evidence." Commonwealth v. Rakes, 478 Mass. 22, 45 (2017).

i.  DNA evidence.  At the beginning of her closing, the prosecutor stated that the defendant's "DNA was found on [the victim]."  This was a misstatement of the evidence.  A forensic scientist at the State police crime laboratory testified that the Y-chromosome short tandem repeat (Y-STR) DNA obtained from the victim's vaginal swab contained a mixture of DNA from more than one male source; she identified one of those sources as the victim's boyfriend.  As for the other contributor, she testified that the defendant's Y-STR DNA profile was consistent with the male DNA profile obtained from the vaginal swab.  She explained, however, that the defendant's Y-STR DNA profile matched his

---

[6] In making this determination, we are guided by the following factors:  "[(1)] whether defense counsel seasonably objected to the arguments at trial . . . [(2)] whether the judge's instructions mitigated the error . . . [(3)] whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters . . . [(4)] whether the jury would be able to sort out the excessive claims made by the prosecutor . . . and [(5)] whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant" (quotations and citation omitted).  Commonwealth v. Kapaia, 490 Mass. 787, 804 (2022), quoting Commonwealth v. Teixeira, 486 Mass. 617, 635, 160 (2021).

brother's Y-STR DNA profile and the two could not be distinguished.

Although the prosecutor's statement was inaccurate, "[i]n the context of the closing argument as a whole . . . this isolated [mis]statement was unlikely to have prejudiced the defendant." Commonwealth v. Brown, 477 Mass. 805, 819 (2017).[7] The jury were aware that the defendant's Y-STR DNA profile matched his brother's, as it was discussed in the trial testimony, in the defense's closing, and was alluded to in the Commonwealth's closing when the prosecutor urged the jury to not be distracted by the "defendant's attempt to divert [their] attention to [the defendant's brother]." Further, the judge instructed the jury that closing arguments "are not a substitute for the evidence." See Commonwealth v. Salazar, 481 Mass. 105, 118 (2018) (where judge properly instructed jury that closing arguments were not evidence, brief isolated misstatement was "not egregious enough to infect the whole of the trial").

ii. The defendant's statements. The defendant contends that the prosecutor also misrepresented the evidence concerning

---

[7] The prosecutor later stated in her closing "that the defendant's DNA profile [was] consistent with the deduced male DNA profile found on the vaginal swab taken from [the victim's] body." She also stated that "[the victim] described being penetrated in her vagina by the defendant" and that the DNA evidence "corroborates that and supports that." This was permissible argument.

8

the defendant's statements to the victim's boyfriend.[8]  We disagree.  The prosecutor's remarks were an accurate recitation of the trial testimony.  There was no error.  See Commonwealth v. Anderson, 411 Mass. 279, 286 (1991) (prosecutor is "entitled to cast the evidence in terms favorable to the Commonwealth").

iii.  The defendant's relationship with the victim's boyfriend.  The defendant next argues that the prosecutor misrepresented the evidence concerning the victim's boyfriend's relationship with the defendant when she asserted that the two were "still friends."  Although there was testimony concerning the friendship between the two, the evidence did not clearly reflect that they remained friends after the incident.  In any event, the challenged remarks make up five short sentences in a closing spanning seventeen pages of transcript.  Moreover, the statements, read in context, were no more than passing remarks. And, contrary to the defendant's assertion, the prosecutor did not explicitly argue that the victim's boyfriend was biased or that a certain portion of his testimony should not be believed based on his alleged friendship with the defendant.

---

[8] The prosecutor argued:

"When he was accused of rape, what was the defendant's response to the accusation of rape?  I don't know.  And then he apologized.  Once in Cape Verdean Creole, and a second time in English.  I'm sorry.  Did you rape [the victim]?  I'm sorry.  There's nothing ambiguous about that confession."

9

iv. <u>The victim's phone call with her boyfriend</u>.  The defendant also asserts that the prosecutor misstated the content and context of the victim's first phone call with her boyfriend shortly after the rape occurred.  The prosecutor stated that the victim "was an emotional wreck," "crying during that phone call, unable to talk.  Just like she had been a minute earlier with [her boyfriend's brother] in person."  While this characterization of the victim's emotional state took liberties with the testimony, and the timeline was not supported,[9] viewing the statements in context of the entire closing, the jury instructions,[10] and the evidence introduced at trial, they create no serious doubt about the jury's verdict.

b. <u>Bolstering victim's credibility</u>.  The defendant argues that the prosecutor improperly bolstered the victim's credibility by commenting on the victim's willingness to come to court to testify.

"Where credibility is at issue, it is certainly proper for counsel to argue from the evidence why a witness should be believed" (citation omitted).  <u>Commonwealth</u> v. <u>Raposa</u>, 440 Mass.

---

[9] The evidence at trial indicated that the first phone call occurred at around 3 <u>A</u>.<u>M</u>., while the victim's first report of the alleged rape to her boyfriend's brother took place sometime later between 4:30 <u>A</u>.<u>M</u>. and 5 <u>A</u>.<u>M</u>.

[10] After instructing the jury that closing arguments were not a substitute for the evidence, the trial judge instructed them as follows:  "If your memory of the testimony differs from the attorneys' or mine, you are to follow your own recollection."

684, 694-695 (2004). However, "[a] prosecutor may not . . . suggest to the jury that a victim's testimony is entitled to greater credibility merely by virtue of her willingness to come into court to testify" (citation omitted). Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 391-392 (2020).

Following the defendant's closing argument, in which defense counsel stated that the victim "used her voice . . . to tell a story," the prosecutor argued:

> "[The victim] told you she felt like she was getting some of the control back that the defendant had taken from her when she agreed to undergo that long sexual assault examination at the Brockton Hospital.

> "So the defense is correct. She did use her voice. The evidence supports that.

> "And four years later, [the victim] walked into this courtroom and she used her voice again. She walked past all of you and she took that witness stand and she gave voice to the assault. Again, in graphic and painful detail, did she give voice. And she did so face to face, again, for a second time, with that man, her abuser.

> "[The victim's] testimony, her words from that witness stand, in front of you all, strangers to her, that's compelling evidence in this case."

When viewed in context of the entire closing, the bulk of the prosecutor's statements on the victim's credibility were based in the evidence and focused on the victim's demeanor, motive for testifying, and her believability. This was proper. See Commonwealth v. Mitchell, 89 Mass. App. Ct. 13, 28, cert. denied, 580 U.S. 899 (2016). While standing alone, reference to

11

the victim "walk[ing] into th[e] courtroom" and testifying in front of "strangers to her," could be troublesome, we view the challenged comments here as a fair response to the defendant's attack on the victim's credibility.[11]  See Commonwealth v. Chavis, 415 Mass. 703, 713 (1993) ("the prosecutor may make a fair response to an attack on the credibility of a government witness").

c.  Inviting the jury to speculate.  The defendant next contends that the prosecutor invited the jury to speculate that the defendant's wife confronted him after the alleged rape.  The prosecutor argued that when the victim's boyfriend arrived at the defendant's house, the defendant's wife's demeanor was "consistent with someone who saw her husband in the room, or just leaving the room, that [the victim] was sleeping in, and then confronted him about it."  "The argument, although not one that flows inevitably from the evidence, asked the jury to draw an inference that was 'reasonable and possible'" (citation omitted).  Commonwealth v. Mazariego, 474 Mass. 42, 58 (2016).  In any event, the challenged statement addressed a collateral

---

[11] We note that the defendant did not object or request a curative instruction.  See Commonwealth v. Maynard, 436 Mass. 558, 570 (2002), quoting Commonwealth v. Duguay, 430 Mass. 397, 404 (1999) ("The absence of an objection, '[a]lthough not dispositive of the issue . . . is some indication that the tone, manner, and substance of the now challenged aspect[ ] of the . . . argument [was] not unfairly prejudicial'").

12

issue that did not go to the heart of the case and thus furnishes no ground for relief.  See Commonwealth v. Jones, 432 Mass. 623, 629 (2000).

The defendant also takes issue with the prosecutor's comment on the defendant's brother's voluntary submission of his DNA sample for testing, which was characterized as "the actions of an innocent man."  The defendant asserts that implicit in the prosecutor's remark is that the defendant's DNA sample was obtained involuntarily, inviting the jury to infer his guilt. The prosecutor did not make any reference to the defendant, nor did she contrast the defendant's brother's willingness to submit his DNA sample to the defendant's submission of his own.  See Commonwealth v. Vallejo, 455 Mass. 72, 81 (2009).  Additionally, there was no evidence that the defendant did not voluntarily submit a DNA sample.  Viewed in context, the challenged comments were a response to the defendant's third-party culprit defense, which implicated his brother.  Further, the judge instructed the jury that the defendant had no duty to present evidence, and that the defendant could not be found guilty on "suspicion or conjecture."  See Commonwealth v. Hoose, 467 Mass. 395, 412-413 (2014) ("A jury is presumed to follow the judge's instructions").

d.  Denigration of the defense.  The defendant contends that throughout her closing argument, the prosecutor improperly

13

argued that the defense sought to "devalue" the victim's "voice" and her "words."  Again, we view the prosecutor's remarks as a proper response to defense counsel's attacks on the victim's credibility.  See Commonwealth v. Scott, 463 Mass. 561, 574 (2012) (prosecutor entitled to argue "forcefully for a conviction" and "enthusiastic rhetoric . . . and excusable hyperbole" do not require reversal [citations omitted]).  Even assuming error, these comments did not give rise to a substantial risk of a miscarriage of justice.

e.  Cumulative effect of errors.  Finally, the defendant argues that even if no individual error in the prosecutor's closing was prejudicial, the cumulative effect of those errors requires reversal.  We disagree.  After considering the prosecutor's comments "in the context of the entire argument[ ] and the case as a whole" and considering "whether the judge's instructions mitigated [any] error," Commonwealth v. Santiago, 425 Mass. 491, 500 (1997), we conclude that any errors in the

14

prosecutor's closing did not result in any unfair prejudice or a substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Sacks, Singh & Brennan, JJ.[12]),

*Joseph F. Stanton*

Clerk

Entered:  March 16, 2023.

---

[12] The panelists are listed in order of seniority.

15